UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE LEE FERDICK, | 1:09-CV-00040 SMS HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND TERMINATE CASE |
| M. D. McDONALD, Warden, | |
| Respondent. | ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Merced, following his conviction by jury trial on December 15, 2006, of nine counts of lewd and lascivious acts on a child under the age of fourteen (Cal. Penal Code § 288a), and two counts of oral copulation on a child under the age of fourteen and more than ten years younger than the petitioner (Cal. Penal Code § 288a(c)(1)). (LD 4.[1]) The jury further found true the allegations that Petitioner had engaged in substantial sexual conduct with the victim (LD 4.) Petitioner was sentenced to served a total determinate term of 26 years in

---

[1] "LD" refers to the documents lodged by Respondent with his answer.

1  state prison. (LD 4.)

2  Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District. On
3  February 29, 2009, the judgment was affirmed, but the sentence was modified to 20 years. (LD 4.)
4  Petitioner then filed a petition for review in the California Supreme Court. (LD 5.) On May 14, 2008,
5  the petition was summarily denied. (LD 6.)

6  On January 5, 2009, Petitioner filed the instant federal habeas petition in the Sacramento
7  Division of this Court. On January 8, 2009, the petition was ordered transferred to the Fresno
8  Division. Respondent filed an answer to the petition on March 23, 2009.  Respondent concedes the
9  claims presented in the petition are exhausted and timely. Petitioner did not file a traverse.

## FACTUAL BACKGROUND[2]

K. was born in 1995. Petitioner, who is a step-relative of K., was born in 1946. From the time she was two years old, K. was raised by Petitioner's mother ("grandmother") who lives in Planada. When K. was in the third grade, she started attending a private school. During the school week, K. would reside with her godparents. On the weekend, she would stay with her grandmother. Petitioner would often pick K. up from school on Fridays and drive her to the grandmother's house in Planada.

On November 23, 2005, right before the Thanksgiving holiday, K. told her fifth grade teacher that Petitioner had been touching her in places he should not. After K. spoke to her teacher, the school contacted child protective services. Petitioner, who had driven the grandmother's car to the school to pick up K., was asked to wait in the foyer. He waited about 20 to 25 minutes and then left. Petitioner did not return the grandmother's car but drove out of the state. He eventually ended up in Arizona and was arrested in late December 2005.

On November 29, 2005, K. was interviewed by a social worker with child protective services. The interview was video-recorded and observed by law enforcement officials. During the interview, K. described Petitioner touching her "private area" with his hands. She also described him kissing her private area with his lips and tongue. These contacts occurred in Petitioner's bedroom at his apartment, in the living room of the grandmother's house in Planada, and in the car when Petitioner

---

[2] The factual background is taken from the opinion of the state appellate court and is presumed correct. 28 U.S.C. § 2254(e)(1). (LD 4:2-3.)

picked K. up from school. K. described similar contacts in her trial testimony.

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Merced County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

### II. Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

1  538 U.S. at 70-71; see Williams, 529 U.S. at 413.

2  As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III.  Review of Petition

#### A.  Ground One - Insufficiency of the Evidence

In his first claim, Petitioner contends the evidence was insufficient to support the jury's finding that he engaged in oral copulation of the victim as to Count 9.

This claim was presented on direct appeal to the Fifth DCA where it was rejected in a reasoned opinion. (LD 4.) Petitioner then presented the claim to the California Supreme Court where it was summarily denied. (LD 5, 6.) The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to have denied the claim presented for the same reasons stated in the opinion of the Fifth DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The appellate court rejected Petitioner's claim as follows:

> Defendant contends there is insufficient evidence to support his conviction on count 9, which alleged an act of oral copulation occurring near K.'s birthday. Defendant notes that K. never testified that defendant orally copulated her near her birthday, although she did testify defendant touched her private area during an incident that occurred around Columbus Day, which is close to her birthday. Therefore, defendant argues, the only evidence which could arguably support the specific allegation of oral copulation in count 9 was K.'s interview with the social worker, during which she stated that defendant kissed her "the wrong way" and that one of the incidents she described occurred near her birthday. Defendant notes that when the prosecutor asked K. what she meant when she told the social worker that defendant kissed her the wrong way, K. responded: "He would kiss me mouth to mouth with his tongue running over mine." Thus, defendant contends, K. distinguished mouth-to-mouth kissing from oral copulation. Because there was no specific testimony that defendant licked or kissed her private area near her birthday, defendant contends the evidence was insufficient to support count 9. We disagree.
>
> In considering defendant's claim of insufficient evidence, we must determine only whether, on the record as a whole, any rational trier of fact could have found him guilty beyond a reasonable doubt. (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Johnson* (1980) 26 Cal.3d 557, 576-578.) We view the evidence in the light most favorable to the prosecution, and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We affirm if the circumstances reasonably justify the trier of fact's findings, even if they might also be reconciled with a contrary finding. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124.)
>
> Section 288a provides, in relevant part: "(a) Oral copulation is the act of copulating the mouth of one person with the sexual organ or anus of another person. [¶] ... [¶] (c) [¶] (1)

Any person who participates in an act of oral copulation with another person who is under 14 years of age and more than 10 years younger than he or she shall be punished...."

Sufficient evidence exists to support to support defendant's conviction of count 9. Notwithstanding defendant's assertions to the contrary, K.'s statements to the social worker, which were admitted pursuant to Evidence Code section 1360,[FN2] provide ample support for a jury finding that defendant committed the offense of oral copulation during an incident K. described as having occurred near her birthday.

FN2. Evidence Code, section 1360 provides: "(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply: [¶] (1) The statement is not otherwise admissible by statute or court rule. [¶] (2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability. [¶] (3) The child either: [¶] (A) Testifies at the proceedings. [¶] (B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child. [¶] (b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement. [¶] (c) For purposes of this section, 'child abuse' means an act proscribed by Section 273a, 273d, or 288.5 of the Penal Code, or any of the acts described in Section 11165.1 of the Penal Code, and 'child neglect' means any of the acts described in Section 11165.2 of the Penal Code."

As disclosed by the social worker's testimony and the transcript of her interview of K., the social worker gave K. a diagram of a "cookie cutter type little girl" and asked K. to circle the areas where she had been touched. When K. finished, the social worker asked her if there were any other areas where she had been touched. K. replied, "Not touched, he kisses me the wrong way though." The social worker then asked K. to circle the areas where she had been kissed. K. circled her private area and then drew a little line next to it. When the social worker asked K. what the line meant, K. indicated that it meant, "Second time." K. then said, "Second circle." The social worker asked if K. meant another circle could be put there, and K. answered, "Right."

The social worker then asked K. about the first time she could recall defendant touching her the wrong way. K. described an incident where she was playing on defendant's computer in his bedroom and he told her to lie down on his bed and watch television with him. She described defendant removing her pants and underwear and touching her private area with his hands and kissing her private area with his tongue. She got up and went to the bathroom and prayed he would stop. Shortly, however, defendant "started doing the same exact thing" which K. described as "touching me and kissing me at the same place."

The social worker asked K. if she could recall another time defendant touched her. K. responded that after the first incident described above, defendant started touching her whenever she went to his house with her grandmother. When asked if she could recall a specific time it happened, K. replied, "Um, it was last year, around my birthday." The social worker asked her what defendant did. K. answered, "He did the same thing." When the social worker pressed for more detail, K. said that defendant would take her clothes off and then touch her and kiss her with his tongue.

> We find the above evidence sufficient to support count 9, despite the existence of some contradictory statements in K.'s trial testimony. The reviewing court resolves neither credibility issues nor evidentiary conflicts. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Conflicts and even testimony that is subject to justifiable suspicion do not justify the reversal of a judgment. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) It is the exclusive province the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. (*Ibid.*) Since the jury's verdict is supported by substantial evidence, we accord it due deference and do not substitute our evaluation of a witness's credibility for that of the finder of fact. (*People v. Barnes, supra,* 42 Cal.3d 284, 303.)

(LD 4:3-6.)

In reviewing sufficiency of evidence claims, California courts expressly follow the Jackson standard enunciated in Jackson v. Virginia, 443 U.S. 307 (1979). See People v. Johnson, 26 Cal.3d 557, 575-578 (1980); see also People v. Thomas, 2 Cal.4th 489, 513 (1992). Pursuant to the Supreme Court's holding in Jackson, the test in determining whether a factual finding is fairly supported by the record is as follows:

> "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

This Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. Sumner v. Mata, 455 U.S. 539, 597 (1981).

In this case, the state court correctly determined there was sufficient evidence such that a rational trier of fact could find that Petitioner orally copulated the victim around the time of her birthday. As thoroughly discussed by the appellate court, the victim told the social worker that Petitioner had repeatedly touched her inappropriately. (CT[3] 194-196. ) When the social worker asked what Petitioner did on the first instance she could remember, she described how Petitioner removed

---

[3] "CT" refers to the Clerk's Transcript on Appeal.

her pants and underwear and then touched her private area with his hands and kissed her private area with his tongue. (CT 196-199.) She then went to the bathroom and prayed he would stop. (CT 200; RT[4] 135.) When she returned, he "started doing the same exact thing" which was "touching me and kissing me at the same place." (CT 201.) The social worker then asked if there was another time she could recall when Petitioner inappropriately touched her. (CT 195, 205.) She stated she remembered a second time which occurred around the time of her birthday when she and her grandmother went over to Petitioner's house. (CT 205; RT 149.) When asked what had occurred on that occasion, the victim stated, "He did the same thing." (CT 205.) When pressed for further details, she stated Petitioner would take her clothes off and then touch and kiss her with his tongue. (CT 207.)

In light of the evidence, the state court determination was not contrary to, or an unreasonable application of, Federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). The claim must be rejected.

### B. Ground Two - Consecutive Sentences

In his second and final claim for relief, Petitioner alleges the trial court violated his federal constitutional right to a jury trial when it imposed consecutive sentences without presenting the issue to the jury.

This claim was also presented on appeal to the Fifth DCA where it was rejected in a reasoned opinion. (LD 4.) It was then presented to the California Supreme Court where it was summarily rejected. (LD 5, 6.) The California Supreme Court is presumed to have denied the claim for the same reasons expressed by the Fifth DCA.

The Fifth DCA denied the claim as follows:

> Defendant contends imposition of consecutive prison terms based on aggravating factors not found by the jury violated his federal constitutional rights to trial by jury and proof beyond a reasonable doubt under *Cunningham v. California* (2007) 549 U.S. ---- [127 S.Ct. 856, 871].) After *Cunningham,* however, the California Supreme Court held that the imposition of consecutive terms without jury findings on criteria affecting concurrent or consecutive sentences does not offend the federal constitution. (*People v. Black* (2007) 41 Cal.4th 799, 820-823 (*Black II* ).) As defendant recognizes, the doctrine of stare decisis obliges us to reject his consecutive sentence argument. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

---

[4]"RT" refers to the Reporter's Transcript on Appeal.

(LD 4: 6-7.)

The state court decision is not contrary to or an unreasonable application of clearly established Federal law. Recently, in <u>Oregon v. Ice</u>, ___ U.S. ___, 129 S.Ct 711 (2009), the Supreme Court addressed whether a sentencing statute, which assigns findings of fact to impose consecutive sentences rather than concurrent sentences to a judge rather than a jury, is unconstitutional under the Sixth Amendment pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). The Supreme Court concluded that a decision to impose consecutive sentences was not reserved to a jury under the Sixth Amendment; rather, such a sentencing scheme which permitted the judge to make this determination was consistent with "historical practice and the authority of States over administration of their criminal justice systems." <u>Oregon</u>, 129 S.Ct. at 716-20. Therefore, the consecutive sentences imposed by the trial court in this case did not violate the Constitution. Thus, the state court decision denying the claim was not contrary to or an unreasonable application of Federal law.

**IV.  Certificate of Appealability**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. <u>Miller-El v. Cockrell</u>, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the

applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

2) The Clerk of Court is DIRECTED to enter judgment for Respondent; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:   July 31, 2009**               /s/ Sandra M. Snyder
                                         UNITED STATES MAGISTRATE JUDGE